UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DEBORAH THOMAS, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Case No. 5:18-cv-01153 |
| | * | |
| GOVERNMENT PERSONNEL MUTUAL | * | |
| LIFE INSURANCE COMPANY, | * | |
| | * | |
| Defendant. | * | JURY DEMAND |

**COMPLAINT**

Plaintiff, Deborah Thomas, through undersigned counsel, for her Complaint against

Defendant, Government Personnel Mutual Life Insurance Company, alleges as follows:

PARTIES

1.      Deborah Thomas ("Deborah"), maintains a primary residence and is domiciled in

Prince George's County, Maryland, and is a citizen of the State of Maryland within the meaning

and intent of 28 U.S.C. § 1332.

2.      Government Personnel Mutual Life Insurance Company ("GPM Life") is an

insurance company organized and existing under the laws of the State of Texas and is licensed

by the Texas Department of Insurance to do business in Texas. Its principal office is located at

2211 Northeast Loop 410, 4th Floor, San Antonio, Texas 78217-4630.   GPM Life is a citizen of

the State of Texas within the meaning and intent of 28 U.S.C. § 1332. GPM Life is an insurer

that underwrites and issues life insurance.

1

## JURISDICTION AND VENUE

3.     This action is brought pursuant to 28 U.S.C. § 1332(a) as Plaintiff and Defendant are citizens of different states and the amount in controversy is greater than $75,000.

4.     Pursuant to 29 U.S.C. §1132(e)(2), venue is proper in this judicial district because a substantial portion of the events giving rise to this cause of action occurred in this district and the Defendant is located in this district.

## FACTUAL ALLEGATIONS

5.     On November 10, 2015, Deborah's husband, Michael Thomas ("Michael"), applied for life insurance with GPM Life.

6.     As part of the life insurance application, Michael provided information regarding his current and past medical history and physical measurements.  Michael's weight was estimated in the application by GPM Life's agent as 245 lbs.

7.     In addition to the application, on November 14, 2015, Michael also submitted to a paramedical examination and provided bodily fluids.  During the paramedical exam, in which several questions were asked concerning his current and past medical history and physical measurements, Michael's weight was noted by the examiner to be 238 lbs.

8.     As part of the underwriting process, GPM Life obtained and reviewed the application, paramedical examination, a urine test, a blood test, motor vehicle records, a November 11, 2015 pharmacy report with a prescription drug summary history, and information accessed from the MIB Group, Inc. database.

9.     When GPM Life underwriters accessed the MIB Group, Inc. database, they discovered that Michael had weighed 280 lbs. on March 9, 2011; 280 lbs. on January 24, 2013; and 292 lbs. on July 19, 2013.  GPM Life underwriters specifically noted this significant weight differential in the underwriting file.

10.     Furthermore, when GPM Life underwriters accessed a pharmacy report with a prescription summary history, they were informed that Michael was seen by Dr. Anthony Campbell's office in January, 2014; Isata Kallon, PA's office in December, 2014; and Dr. Neil Rosenman's office in October, 2015.   The visit to Dr. Rosenman's office concluded with a prescription for an albuterol inhaler.

11.     As discussed in the Pharmacy Report contained in the underwriting file, Albuterol Sulfate is used to treat or prevent bronchospasm in patients with asthma, bronchitis, emphysema, and other lung diseases. The medicine is also used to prevent wheezing caused by exercise (exercise-induced bronchospasm).   Albuterol belongs to the family of medicines known as adrenergic bronchodilators.   Adrenergic bronchodilators are medicines that are breathed in through the mouth to open up the bronchial tubes in the lungs.   They relieve cough, wheezing, shortness of breath, and troubled breathing by increasing the flow of air through the bronchial tubes.

12.     GPM Life underwriters wrote in the underwriting that file that the pharmacy report with a prescription drug summary history revealed "nothing of concern."

13.     On December 15, 2015, GPM Life issued a life insurance Policy No. 803935 (the "Policy"), to Michael, as owner and insured.

14.     The Policy insured Michael's life for a face amount of $632,000.

15.     Michael and Deborah relied on the issuance of life insurance coverage by GPM Life as evidence of his insurability, and made no effort to obtain backup coverage.

16.     Michael's wife, Deborah, was the primary beneficiary of the Policy.

17.     Michael timely paid all premiums from the inception of the Policy until his death.

18.     On December 25, 2016, Michael died from abnormal enlargement of the heart in Upper Marlboro, Maryland.

19.     On December 27, 2016, Deborah notified GPM Life of Michael's death.  GPM Life advised Deborah that she would need to submit a formal claim for the death benefit.

20.     On January 17, 2017, Deborah submitted all required written claim form documents to GPM Life, including a HIPAA authorization, W-9, Authorized Relative Certification, and a Claimant's Statement.

21.     As the Policy was less than two years old at the time of Michael's death, it was subject to a standard contestability review.

22.     On June 1, 2017, GPM Life wrote to Deborah and denied the claim alleging that Michael had failed to disclose a prior hospitalization in 2015 for shortness of breath, failed to disclose diagnosis or treatment for a disorder of the respiratory system, and had failed to disclose that within the year prior to his application his weight changed 10 pounds or more.

23.     Specifically, GPM Life has represented that after Michael's death, it obtained records showing that he weighed an estimated 286 pounds on October 10, 2015, and an estimated 283 pounds on October 12, 2015, approximately one month prior to his application.

24.     GPM Life therefore asserts that Michael failed to disclose the seemingly impossible loss of some 45 pounds between October 12, 2015 and November 14, 2015.

25.     GPM Life now claims that if it had known about these discrepancies at the time of underwriting, it would have postponed any offer for coverage pending full explanation of his hospital visit, shortness of breath and weight loss, and would not have issued the Policy.

26.     GPM Life considers medical treatment for disorders of the respiratory system to be significant when underwriting life insurance.

27.     However, prior to offering life insurance coverage to Michael, GPM Life knew that he had a history of shortness of breath for which he had sought medical treatment in the form of, among other things, an inhaler, and yet, after assessing the risk, still issued the Policy to him.

28.     GPM Life considers any weight change of 10 pounds or more within a 12-month period significant when underwriting life insurance.

29.     However, prior to offering life insurance coverage to Michael, GPM Life was on notice that his weight had changed by 54 pounds in the 2-year period prior to his application and, after assessing the risk, still issued the Policy to him.

30.     In addition to knowing that Michael had a history of medical treatment for shortness of breath, an inhaler, a history of a 54-pound weight change in the past two years, a history of having a physical body build above PRF Guidelines, a mother who had died young at age 66, and a father who died young at age 64, after assessing the risk, GPM Life still issued the Policy to him.

31.     On information and belief, as part of assessing the risk factors, GPM Life took into consideration that it had reinsurance coverage of $507,000, and was only exposed to a maximum risk of 20% of any loss – or total claim exposure of $125,000.

32.     On October 16, 2018, GPM Life again wrote to Deborah and confirmed that it was denying the claim for the same reasons as stated on June 1, 2017.

33.     As of the date of this filing, Deborah's claim remains unpaid.

CAUSES OF ACTION

COUNT I
Breach of Contract

34.     Deborah incorporates her allegations in the foregoing paragraphs 1-33 by reference as if set forth fully herein.

35.     The Policy is a written contract between Michael and GPM Life for the benefit of Deborah, as the named beneficiary of the Policy.

36.     In issuing the Policy, GPM Life obligated itself to pay Deborah the death benefit in the event of Michael's death.

37.     As the sole named beneficiary of the Policy, Deborah was a third-party beneficiary of the written contract of insurance between Michael and GPM Life as his wife and the named beneficiary, and has a right to enforce the contract.

38.     Despite irrefutable evidence that Michael is deceased and that under the terms of the Policy Deborah is entitled to payment of the $632,000 death benefit, GPM Life has refused to pay the death benefit.

39.     GPM Life has thus breached its contract with Michael, of which Deborah is a third-party beneficiary.

40.     As a result of the breach of contract by GPM Life, Deborah has been damaged in the amount of the $632,000 plus interest from the date of loss until paid.

COUNT II
Detrimental Reliance

41.     Deborah incorporates his allegations in the foregoing paragraphs 1-33 by reference as if set forth fully herein.

42.     GPM Life made a promised to Michael that it would pay Deborah death benefits in the event of Michael's death.

43.     Based upon its underwriting investigation, GPM Life knew at the time it issued the Policy that it would contest payment of the death benefit if Michael's death occurred during the contestability period for items discovered during the underwriting process that were not fully disclosed on the application.

44.     GPM Life had a reasonable expectation that the offer would induce Michael into believing he had coverage. By issuing the Policy, GPM Life knew or should have known that Michael and Deborah would rely upon the coverage and not pursue backup or additional life insurance coverage on the life of Michael.

45.     Michael and Deborah were in fact induced into actual forbearance on applying for backup or additional life insurance with any other company.

46.     If GPM Life fails to pay the promised life insurance proceeds specified by the Policy, then this loss has caused a detriment which can only be avoided by enforcement of the promise to pay under the Policy.

47.     By not obtaining additional life insurance coverage, Deborah has suffered damages in the amount of $632,000 plus interest from the date of loss until paid.

## COUNT III
### Breach of the Covenant of Good Faith and Fair Dealing

48.     Deborah incorporates her allegations in the foregoing paragraphs 1-33 by reference as if set forth fully herein.

49.     In every contract entered into in Maryland, there exists an implied covenant that each party thereto will act in good faith and deal fairly with the other party.

50.     GPM Life entered into a contract with Michael for life insurance coverage on his life, and Deborah was the third party beneficiary of this contract for life insurance coverage as his wife and the named beneficiary.

51.     Based upon its underwriting investigation, GPM Life knew at the time it issued the Policy that it would contest payment of the death benefit if Michael's death occurred during the contestability period for items discovered during the underwriting process that were not fully disclosed on the application.

52.     GPM Life owed a duty of good faith and fair dealing to Michael that required it to either bring these items to Michael's attention during the underwriting process and allow him to respond to any questions GPM Life had about his weight loss or treatment for shortness of breath before issuance of the Policy, or it had a duty to not issue the Policy knowing it would contest it on these bases.

53.     GPM Life breached its duty of good faith and fair dealing to Michael by not allowing him to respond to and resolve any issues GPM Life had about Michael's weight loss and treatment for shortness of breath before issuance of the Policy, or by not telling him that he was uninsurable by GPM Life underwriting standards.

54.     GPM Life issued the Policy, collected premiums, and never advised Michael of any issues regarding his weight loss and treatment for shortness of breath until after Michael died and the claim for life insurance proceeds was submitted.

55.     GPM Life has denied Deborah's claim for life insurance proceeds payable under the Policy based on questions about Michael's weight loss and treatment for shortness of breath of which it was already aware before issuance of the Policy.

56.     As a direct result of GPM Life's breach of its duty of good faith and fair dealing, Deborah has suffered damages in the amount of $632,000 plus interest from the date of loss until paid.

## JURY DEMAND

57.     Deborah hereby demands a jury trial on all issues triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Deborah Thomas, prays for judgment in her favor, costs, interest, attorney's fees to the extent authorized, and any other relief deemed just and proper.

DATED this 2nd day of November, 2018.

Respectfully submitted,


*/s/ Michael J. Hoover*
Michael J. Hoover
LA Bar No. 35497
Interpleader Law, LLC
9015 Bluebonnet Blvd.
Baton Rouge, Louisiana 70810
Telephone: (225) 246-8706
Email: michael.hoover@interpleaderlaw.com

*Attorney for Deborah Thomas*